UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALEJANDRO AGUIRRE-MOLINA, for
himself and on behalf of those similarly
situated,

          CASE NO.:  2:15-cv-608-FtM-38CM

       Plaintiff,

vs.

TRUSCAPES SW FLA INC., a Florida
Profit Corporation; TRUSCAPES
INDUSTRIES, INC., a Florida Profit
Corporation, LLOMELL LORCA,
Individually,

       Defendants.
_____/

**PLAINTIFF'S MOTION FOR AN ORDER PERMITTING SUPERVISED NOTICE OF
THIS ACTION TO POTENTIAL OPT-IN PLAINTIFFS AND CONDITIONAL
CERTIFICATION OF THIS CASE AS A COLLECTIVE ACTION
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, ALEJANDRO AGUIRRE-MOLINA, on his own behalf and on behalf of those

similarly situated ("Plaintiff"),  requests the entry of an Order for conditional certification of this

collective action and permitting, under supervision, notice to all hourly paid landscaping

employees ("Hourly Landscaping Employees") who worked for Defendants, TRUSCAPES SW

FLA INC., and TRUSCAPES INDUSTRIES, INC., ("TRUSCAPES" or "Defendants"), in the

three (3) years preceding the date this action was filed, and through the date notice is mailed in

this matter, who were subject to an illegal pay practice and policy pursuant to which they were

paid for their hours over forty in a workweek at their regular hourly rate, with no overtime

premium, and were not paid at all for many hours over forty.  Through this policy and practice,

for which Defendants have already been fined by the Department of Labor on two separate occasions, Defendants denied proper overtime compensation to all of their Hourly Landscaping Employees.  Plaintiff's proposed Class Notice and Consent to Become an Opt-In Plaintiff are attached hereto as **EXHIBITS A and B,** respectively.

Accordingly, Plaintiff requests conditional certification in the instant matter and states as follows:

### MOTION FOR AN ORDER PERMITTING COURT SUPERVISED NOTICE TO EMPLOYEES OF THEIR OPT-IN RIGHTS

1.      Section 216(b) of the Fair Labor Standards Act of 1938 ("FLSA") provides, among other things, that an action to recover unpaid minimum wages and/or unpaid overtime compensation may be maintained against any employer in any federal or state court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. *See* 29 U.S.C. § 216(b).

2.      As stated in Plaintiff's Complaint and his declaration in support of this Motion, Plaintiff was an Hourly Landscaping Employee employed by Defendant.  *See* Complaint and Demand for Jury Trial, D.E. 1 and Declaration of Alejandro Aguirre Molina (A. Molina Dec."), attached as **Exhibit D**, at ¶ 3.  Defendants failed to pay all Hourly Landscaping Employees in the putative class overtime premiums when they worked over forty (40) hours in a workweek, pursuant to a common plan or scheme whereby they paid limited overtime hours at the regular hourly rate with no overtime premiums, and other overtime hours were completely unpaid.

3.      TRUSCAPES is a Company engaged in the business of providing landscaping services, and "provide[s] full service maintenance programs specializing in Commercial and Residential properties.  [Its] maintenance services include mowing, edging, fertilization, weed control, insect and disease control, pruning, cleanup, irrigation, plant/tree/irrigation installation

and other services to keep [its clients'] landscaping in exceptional condition year round.  *See* excerpt from Truscapes website, available at [www.truescapeslandscaping.com](www.truescapeslandscaping.com), attached as **Exhibit C**.  Plaintiff and other Hourly Landscaping Employees traveled to clients' homes, performing some or all of the above listed services. *See, e.g.,* A. Molina Dec., at ¶ 5.

4.     Plaintiff was an Hourly Landscaping Employee working for Defendants as an irrigation technician.  *See id.* at ¶ 3.  In exchange for the performance of his duties, Plaintiff was paid an hourly rate for some, but not all of his hours.  *Id*. at ¶¶ 6.  Even though Plaintiff would routinely work from 7:00 a.m. until 6:00 or 7:00 at night, he was often not paid for many of his overtime hours.  *Id*. at ¶¶ 7.  In addition, those overtime hours that were paid were not paid at an overtime rate, but rather were paid at Plaintiff's regular hourly rate.  *Id*.

5.     Plaintiff and other Hourly Landscaping Employees shared common job duties, as the job of all of Defendants' Hourly Landscaping Employees was traveling to client's homes and performing some or all of the landscaping duties outlined on Defendants' website and set forth above, such as mowing, edging, fertilization, weed control, insect and disease control, pruning, cleanup, irrigation, and plant/tree irrigation and installation.  *Id.* at ¶ 8; Declaration of Fernando Molina ("F. Molina Dec."), attached as **Exhibit E,** at ¶¶ 5, 8; Declaration of Jorge Ruiz, attached as **Exhibit F** ("Ruiz Dec."), at ¶¶ 5, 8; Declaration of Geovanni Hernandez, attached as **Exhibit G** ("Hernandez Dec."**),** at ¶¶ 5, 8.

6.     Plaintiff and other Hourly Landscaping Employees regularly worked forty or more hours per workweek during their employment with Defendant.  A. Molina Dec., at ¶ 7; F. Molina Dec., at ¶ 7; Ruiz Dec., at ¶ 7; Hernandez Dec., at ¶ 7.

7.     However, Plaintiff and other Hourly Landscaping Employees were not paid any overtime premiums for any of this work.  *See id*.  In fact, for many overtime hours, Plaintiff and other Hourly Landscaping Employees were not paid at all.  *See id*.

8.     Plaintiff's payroll records also clearly show that all of his hours, whether over forty or under, were all paid at the same hourly rate of $13.50 per hour.  *See* Plaintiff's payroll records, attached as **Exhibit H**.  For example, these records show that for the two week period ending on February 27, 2015, Plaintiff was paid for 89.75 hours at a rate of $13.50 for each hour, totaling $1,211.63.  *See id.*

9.     Mr. Alejandro Molina specifically asked if he could be paid for all of his overtime hours and at a rate including an overtime premium, and was informed by his supervisor James Lamb that the company would not pay overtime.  *See* A. Molina Dec. at ¶ 10**.**

10.     Plaintiff claims are typical of the claims of other former and current similarly situated Hourly Landscaping Employees employed by Defendants, and typical of the claims of all members of the representative class described below.  *See* A. Molina Dec., at ¶ 9; F. Molina Dec., at ¶¶ 5-8; Ruiz Dec., at ¶ 5-8; Hernandez Dec., at ¶ 5-8.  There were at least 50 such Hourly Landscaping Employees employed by Truscapes during Plaintiff's employment, alone.  A. Molina Dec., at ¶ 9.

11.     Furthermore, when the Department of Labor investigated Defendants in 2012 and found over $60,000 of unpaid overtime owed to Defendants' Hourly Landscaping Employees based on the practice of failing to pay overtime premiums on hours over forty in a workweek, it found 197 affected employees to whom these wages were owed.  *See* Department of Labor Compliance Action Report, attached as **Exhibit I**, at p. 2.

12.     As stated above, the representative class consists of all **Hourly Landscaping Employees who worked for Defendants in the three years preceding the filing of the Complaint in this action through June 2015 who worked over forty hours in one or more workweeks.** All of these employees were subject to the unlawful practices described above, and as a result of such unlawful compensation practices, each Hourly Landscaping Employee did not receive full and proper payment of overtime compensation for all hours worked over 40 in one or more workweeks for Defendant.  The named Plaintiff, as well as declarants who worked at TRUSCAPES, have filed Opt-in Consents and/or Declarations in support of this Motion. Moreover, Plaintiff anticipates filing numerous additional consent forms for other "similarly situated" employees who likewise wish to join this lawsuit.

13.     Simply put, all other Hourly Landscaping Employees are owed full and proper payment of their overtime wages and the right to participate in this litigation.  Defendants have acted or refused to act on common grounds applicable to all these Hourly Landscaping Employees, thereby making the identical relief appropriate with respect to their current and former Hourly Landscaping Employees as a whole.  And, although the class of Hourly Landscaping Employees is identified and certain, the individual members of the class cannot be completely identified and notified of their right to join this action absent access to Defendants' records.

14.     The named Plaintiff, as well as three (3) additional "Opt-In Plaintiffs," have already filed Declarations in support of this Motion. All were subject to the same policies and practices.  *See* A. Molina Dec., at ¶¶ 5-9; F. Molina Dec., at ¶¶ 5-8; Ruiz Dec., at ¶ 5-8; Hernandez Dec., at ¶ 5-8.

WHEREFORE, Plaintiff, Alejandro Aguirre Molina, respectfully requests that the Court permit and supervise notice by posting, mail and email to all current and former Hourly Landscaping Employees who worked for Defendants in the three years preceding the filing of the Complaint in this matter through June 2015.

## MEMORANDUM OF LAW

### I.  INTRODUCTION

The FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated. *See* 29 U.S.C. § 216(b).  The FLSA provides, in part, that:

> An action to recover the liability [for unpaid overtime] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other similarly situated. ***No employee shall be a party Plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.***

*See id.* (emphasis added).

Defendant, TRUSCAPES, operates in the Ft. Myers area in Florida.  As part of its business, TRUSCAPES employed, and continues to employ, Hourly Landscaping Employees to perform the main function of its business, providing landscaping and lawn maintenance services. *See* A. Molina Dec., at ¶ 5; *see also* **Exh. C**.  Plaintiff is aware that over 50 other Hourly Landscaping Employees who worked for TRUSCAPES during his employment, were subject to the same unlawful policies described in his declaration. *See* A. Molina Dec., at ¶ 9; *See also* Department of Labor Compliance Action Report, **Exh. I**, at p. 2.  Plaintiff is aware that other Hourly Landscaping Employees working for TRUSCAPES also were not paid for all of their overtime hours, and were improperly compensated for other overtime hours at their regular

hourly rates, with no overtime premium included.  Plaintiff and those similarly situated to him who have joined this action, are such Hourly Landscaping Employees. *See generally* **Exhs. D-G**.

These policies and practices to which Plaintiff, opt-ins, and other Hourly Landscaping Employees were subjected are unlawful.  *See* 29 U.S.C. § 207(a) ("… no employer shall employ any of his employees who in any workweek … is employed in an enterprise engaged in commerce… for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.")  Thus, Plaintiff seeks conditional certification on behalf of all current and former Hourly Landscaping Employees working for Defendants in Florida within the three (3) years preceding the filing of the Complaint, as all of those employees were subject to Defendants' illegal pay practices and policies of failing to record all overtime hours, and paying recorded overtime hours at the wrong rate. *See generally* **Exhs. D-G**.

Defendants' above compensation policies violate the FLSA's overtime provisions requiring the payment of time and one half overtime compensation for each hour worked over forty (40) in a workweek.  Plaintiff maintains that such compensation practices demonstrate common policies that violated the law and adversely affected the rights of each member of this collective action.  Therefore, Plaintiff seeks this Court's authorization to facilitate notice to each of Defendants' Hourly Landscaping Employees, as this group of employees was subjected to the illegal pay practices described above during the three (3) years preceding the date the Complaint was filed through June 2015.[1]

Plaintiff further requests that he be permitted to give such notice as approved by this Court to all such class members of their rights to opt-in to this litigation by executing an

appropriate consent as required by Section 216(b) of the FLSA.  The declarations of Plaintiff and three other Hourly Landscaping Employees, submitted along with this motion, attest that Defendants' other Hourly Landscaping Employees had similar duties, were paid in the same manner, and were not compensated for all of their overtime hours due to Defendants' compensation policies.

## II.      APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS

### A.      Authority to Send Class Notice

FLSA class actions operate much differently than the typical class action suits under Rule 23 of the Federal Rules of Civil Procedure.  Under 29 U.S.C. § 216(b) of the FLSA, an employee belonging to a similarly situated class of Plaintiffs must "opt-in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case.  Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. *See id.* This is the exact opposite of a traditional Rule 23 class action, in which a plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out."

In *Hoffman-La Roche, Inc. v. Sealing*, 110 S. Ct. 482 (1989), the Court ruled that not only did trial courts have authority to compel defendant-employers to provide names and addresses of potential plaintiffs through the pretrial discovery process, but that this authority also included sending court-authorized consent forms to potential plaintiffs.  *See id.*  There, the Court addressed the issue of whether the district court may play any role on prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought.  *See id.*  The Court determined that district courts have discretion in appropriate cases to implement 29 U.S.C. §216(b), by facilitating notice

---

[1]      It is Plaintiff's understanding that Defendants ceased their unlawful pay scheme after June 2015.

to potential plaintiffs.  *See id* at 486.  This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner.  *See id.*

Trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute.  Thus, it lies within the discretion of the trial court to begin its involvement early, at the point of the initial notice, rather than at some later time.  *See id.*  Court authorization of notice serves the legitimate goal of avoiding a myriad of duplicative suits, and setting uniform cutoff dates to expedite disposition of the action.  *See id*. at 487.  Additionally, the benefits of the class action provisions of 29 U.S.C. §216(b), "depend on employees receiving accurate and timely notice concerning the pendency of the collective action so they can make informed decisions about whether to participate."  *Id.* at 486.

The Eleventh Circuit addressed this issue in *Dybach v. State of Florida, Department of Corrections*, 942 F.2d 1562 (11th Cir. 1991).  In *Dybach*, the Eleventh Circuit found that an adult probation officer was non-exempt and therefore entitled to overtime compensation for all hours worked over forty (40) in multiple workweeks.  *See id.*  The Eleventh Circuit also held that the district court had authority to issue an order requiring notice to "similarly situated" employees of the Defendants affording them the opportunity to "opt-in."  *Id.*

### B.  <u>The Eleventh Circuit Uses a Two-tiered Approach</u>

The Eleventh Circuit utilizes a two-tiered approach to certification of an opt-in class pursuant to 29 U.S.C. § 216(b).  *See Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1219 (11th Cir. 2001) (stating that the two-tiered approach "appears to be an effective tool").  Under this two-tiered approach, the court makes an initial determination, based solely upon the pleadings and any affidavits, whether notice of the action should be given to potential class members.  *See id.* at 1218. Because the court has minimal evidence at this stage of the

proceedings, this determination is made using a ***fairly lenient standard, and typically results in conditional certification of a representative class***. *See id.* (emphasis added).   Thereafter, at "stage two," a more rigorous factual determination is made as to whether the potential opt-in plaintiffs are similarly situated. *See id.*

There are questions of law or fact common to Defendants' Hourly Landscaping Employees and the claims of the named Plaintiff in the instant matter.  Indeed, Plaintiff's claim is typical of the claims of the other individuals in his position.  All of the Hourly Landscaping Employees were subject to two distinct policies pursuant to which Defendants unlawfully deprived them of earned overtime compensation: all overtime hours were not recorded and thus were not paid; and those overtime hours that were recorded and compensated were paid without any overtime premium.  For purposes of defining the "similarly situated class" pursuant to 29 U.S.C. § 216(b), Plaintiff need only demonstrate that the defined class is comprised of representatives who are similarly situated to Plaintiff with regard to Defendants' payroll practices and record keeping requirements. *See* 29 U.S.C. § 216(b); *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991).  There is no requirement of "strict symmetry" or "absolute identity"; rather potential class members must meet only a "sufficiently similar" standard.  *Glass v. IDS Financial Services, Inc.,* 778 F.Supp. 1029, 1081 (D. Minn. 1991) (an allegation that a single decision, policy or plan precipitated the challenged action was sufficient to define the class).  As indicated above and in the attached Declarations, Plaintiff has done much more than that.  From the declarations, it is clear that the Hourly Landscaping Employees were compensated in the same manner, subjected to the same policies and practices, and suffered the same injury as the result of Defendants' common compensation policies.

**C. Courts Focus on a Common Scheme or Plan and do not Require Many Opt-ins to Have Joined When Determining Whether to Grant Notice.**

### a. Common Scheme or Plan

In determining whether to grant notice of a collective action, courts focus on whether plaintiffs were victims of a common scheme or plan that violated the law. *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1258 (11th Cir. 2008); *Dybach v. State of Fla. Dep't of Corrections,* 942 F.2d 1562, 1567–68 (11th Cir. 1991). This determination is made using a "fairly lenient standard." *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1218 (11th Cir. 2001). A plaintiff need not conclusively demonstrate that he and the other putative class members are, in fact, similarly situated. Rather, they must show that he "and potential Plaintiffs together were victims of a common policy or plan that violated the law." *Rubery v. Buth-na-Bodhaige, Inc.*, 569 F.Supp.2d 334 (W.D.N.Y. 2008). *See also Scholtisek*, 229 F.R.D. 381, at 390 ("[w]hat is important is that these employees were allegedly subject to a common practice or scheme on [their employer's] part"). Moreover, notwithstanding the substantial class discovery that has taken place, "it would be inappropriate ... to require Plaintiffs to meet a more stringent standard than that typically applied at the early stages of litigation" before discovery is complete. *See id.*

In support of this motion, Plaintiff has provided personal knowledge of himself and other Hourly Landscaping Employees, as well as Defendants' own pay documents that show that overtime premiums were not included for hours over forty that were paid. *See* A. Molina Dec., at ¶¶ 6-7; F. Molina Dec., at ¶¶ 6-7; Ruiz Dec., at ¶ 6-7; Hernandez Dec., at ¶ 6-7; pay records for A. Molina, **Exh. H**. This is a violation of the FLSA. *See* 29 U.S.C. § 207(a) ("… no employer shall employ any of his employees who in any workweek … is employed in an enterprise engaged in commerce… for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not

less than one and one-half times the regular rate at which he is employed.")  Thus, these allegations alone would merit notice to the class.

In addition, Plaintiff and opt-ins aver based on personal knowledge that they were not paid for additional compensable overtime hours.  This policy also violates the FLSA.  *See id.*

### b.  Number of Opt-In Plaintiffs Required

In determining whether to grant a Motion for Class Notice, typically, courts in Florida and across the nation do not require a high number of opt-in plaintiffs to have already joined the case, and there is no magic number.  *See Anish v. National Securities Corp.*, No. 10-80330, 2012 WL 1906500 at *2-3 (S.D. Fla. May 25, 2012) (granting conditional certification based on affidavits of <u>one</u> plaintiff and <u>one</u> opt-in plaintiff*); Miller v. Jackson, Tenn. Hosp. Co.*, No. 3:10–1078, slip op. at 3, 13 (M.D. Tenn. Mar. 22, 2011) (conditionally certifying collective action on basis of named plaintiff's affidavit and "sworn declarations" of <u>two</u> proposed plaintiffs), *Bailey v. Youth Vills., Inc.*, No. 07–1089–T– An, slip op. at 2–4 (W.D. Tenn. Mar. 18, 2008) (granting conditional certification on affidavits of lead plaintiff and one other individual); *Sanders v. MPRI, Inc.*, No. 5:08-cv-00345, 2008 WL 5572846 (W.D. Okla. October 16, 2008) (pleadings and plaintiff's affidavit sufficient);   *Dieujuste v. R.J. Elec., Inc.,* No. 7–80272, 2007 WL 2409831 (S.D. Fla. Aug. 21, 2007) (granting conditional certification when two individuals sought overtime wages against the same employer and each filed a declaration); *Douglass v. GE Energy Reuter Stokes,* No. 1:07-CV-77, 2007 WL 1341779 (N.D. Ohio, April 20, 2007) (holding that two affidavits stating that overtime was not paid were sufficient to grant conditional certification); *Sniffen v. Spectrum Indus. Serv.,* 2007 U.S. Dist. LEXIS , at *4, 2007 WL 1341772 (S.D. Ohio February 13, 2007) (granting conditional certification based on two affidavits and payroll records indicating a failure to pay overtime); *Beck v. Desoto Health and Rehab,* case No.:

2:06-CV-226-FTM-34DNF, at Docs. 23, 34 (M.D. Fla. Jan. 24, 2007) (granting notice motion with only <u>one (1)</u> opt-in); *Robbins–Pagel v. WM. F. Puckett, Inc.,* No. 6:05–cv–1582–Orl– 31DAB, 2006 WL 3393706 (M.D. Fla. Nov. 22, 2006) (finding that three affidavits alleging claims of unpaid overtime was sufficient to establish that other individuals were interested in joining the action); *Larry Guerra v. Big Johnson Concrete Pumping, Inc.,* Case No. 05-14237, 2006 WL 2290517 (S.D. Fla. May 17, 2006) (granting class notice where there was only <u>one (1)</u> Opt-in plaintiff); *Dietrich v. Liberty Square,* 230 F.R.D. 574, 579 (N.D. Iowa 2005) (<u>two (2)</u> affidavits provide sufficient factual basis for similarly situated inquiry); *Ballaris v. Wacker Silttronic Corp.*, 2001 WL 1335809, at *2 (allegations in complaint and two affidavits sufficient); *Zhao v. Benihana*, 2001 WL 84500, at *2 (S.D.N.Y. May 7, 2001) (one affidavit based on plaintiff's "best knowledge" sufficient); *Camper v. Home Quality Management,* 200 F.R.D. 516 (D. Md. 2000) (granting conditional certification on the basis of the sworn depositions of <u>two</u> plaintiffs who alleged that a lunch break was automatically deducted from their time sheets even on days where they worked through their lunch). *See also Johnson v. ECT Contracting, LLC,* No. 3:09–0130, 2010 WL 625390, at *1, *4 (M.D. Tenn. Feb. 18, 2010) (relying on affidavits of three plaintiffs and one former employee to conditionally certify collective action), *Ackley v. City of Fort Lauderdale*, Case No.: 0-:07-cv-60960, at Doc. 45(S.D. Fla. Jan., 24, 2008) (granting Motion for Class Notice with plaintiffs and <u>two (2)</u> opt-in plaintiffs); *Wajcman v. Hartman & Tyner, Inc*., No. 07-61472-CIV-COHN, 2008 WL 203579 (S.D. Fla. January 23, 2008) (allegations in Complaint and affidavits of 3 opt-ins sufficient); *Gayle v. U.S.*, 85 Fed.Cl. 72 (Fed. Cl. 2008) (allegations in complaint and affidavit of named plaintiffs sufficient); *Reyes v. Carnival Corp.,* No. 04-21861-CIV- GOLD, 2005 WL 4891058 (S.D. Fla. May 25, 2005) (named plaintiffs' affidavit, in combination with the two opt-in

plaintiffs' notices of consent to join and affidavits sufficient to grant conditional certification of an FLSA collective action); *Realite v. Ark Restaurants Corp.*, 7 F.Supp.2d 303, 307 (S.D.N.Y. 1998) (allegations in complaint and plaintiffs' affidavits sufficient for notice to collective); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 442-45 (N.D. Ill. 1982) (allegations in complaint sufficient for notice to collective).

Here, Defendants employed a team of over 50 Hourly Landscaping Employees during Plaintiff's employment, alone.   Four Hourly Landscaping Employees are already party to this nascent action, all subject to the same policies and practices.  *See* A. Molina Dec., at ¶¶ 5-9; F. Molina Dec., at ¶¶ 5-8; Ruiz Dec., at ¶ 5-8; Hernandez Dec., at ¶ 5-8.

Based upon the Declarations submitted in support of this Motion, Plaintiff has provided specific facts to this Court based on personal observation to support his belief that other employees are interested in opting in.  *See Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996).   In addition, allowing class notification to a potential class of over 50 Hourly Landscaping Employees serves the collective action mechanism's purpose of avoiding multiple lawsuits where numerous employees have allegedly been harmed by the same violation.  *See Prickett v. Dekalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003).   Also, these Declarations and pay records demonstrate by specific knowledge that other similarly situated Hourly Landscaping Employees will continue to join this case following this motion.   Thus, based upon the foregoing, Plaintiff respectfully submits that he has satisfied the applicable burden of persuasion and there can be no doubt that a colorable basis exists for determining that others similarly situated to Plaintiff exist and desire to join.

Here, a collective action (as they are termed under the FLSA) is sought as the Defendants has acted or refused to act on grounds generally applicable to the class.   Defendants' current and

former Hourly Landscaping Employees were subject to Defendants' illegal pay practices and policies: (1) paying no overtime premium for hours over forty that were paid; and(2) failing to pay at all for additional compensable overtime hours, thereby making appropriate the same relief with respect to the class as a whole.   In addition, questions of law or fact common to all Hourly Landscaping Employees who worked for Defendants predominate over any questions affecting only individual members.   Thus, a collective action is superior to other available methods for the fair and efficient adjudication of this controversy.

**D.  Factors Irrelevant to The Court's Consideration At Stage I**

**a.  The "Merits" of Plaintiff's Claims are Not Considered When Determining Whether to Grant Notice to Potential Class Members.**

Defendants may deny Plaintiff's claims despite the fact that, at the very least, the uniform policy of failing to pay overtime premiums on recorded hours over forty is uniform as to all class members.   Notwithstanding, at the "conditional certification" stage, courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly-situated." *Kreher v. v. City of Atlanta*, 2006 WL 739572, at *4 (N.D. Ga. 2006) (*citing Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus of [the conditional certification] inquiry is not whether there has been an actual violation of law, but rather on whether the proposed plaintiffs are 'similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.'"); *Shajan v. Baralo, Ltd.*, 2010 WL 2218095, at *1 (S.D.N.Y. 2010) (At the conditional certification stage, "[w]eighing of the merits is absolutely inappropriate."); *Gjurovich v. Emmanual's Marketplace, Inc.*, 282 F.Supp. 2d 91, 96 (S.D.N.Y. 2003) ("Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly-situated to the named plaintiff..."); *Goldman v. Radioshack Corp.*, 2003 WL 21250571 at *8 (E.D. Pa. 2003) ("A fact-

specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant.").

Indeed, the fact that a jury must ultimately engage in a factual inquiry as to ultimate liability does not preclude conditional certification at the initial notice stage of the proceedings. *See Carrera v. UPS Supply Chain Solutions, Inc*., 2011 WL 1303151, at *6 (S.D. Fla. Mar. 31, 2011); *Clincy v. Galardi South Enterprises, Inc.*, 2010 WL 966639, at *1, 3 (N.D. Ga. Mar. 12, 2010); *Kerce v. West Telemarketing Corp.*, 575 F.Supp. 2d 1354, 1365 (S.D. Ga. 2008); *Gutescu v. Carey International, Inc.*, 2003 WL 25586749, at *2, 15 (S.D. Fla. 2003).

### b. Courts Do Not Consider Discovery During the Conditional Certification Stage.

The Eleventh Circuit and the district courts in it have consistently recognized that discovery at the first notice stage is unnecessary for the similarly situated determination. *See Grayson*, 79 F.3d at 1099 (holding that a district court may, but is not required to hold an evidentiary hearing prior to making its Section 216(b) decision, particularly where the Defendants' rights are not substantially affected) (emphasis in original); *see also Lloredo v. Radioshack Corp.,* 2005 WL 1156030, at *1 (S.D. Fla. 2005) (refusing to examine discovery in making its first stage similarly situated determination); *Harrison v. Enterprise Rent-A-Car Co.*, 1998 WL 422169, at *13 (M.D. Fla. 1998) (holding that the fact that subsequent discovery may prove the original plaintiffs and the opt-in plaintiffs are not after all "similarly situated" does not defeat conditional class certification).  An examination of discovery is not appropriate because, at this stage, the Court is not making a factual determination regarding whether the putative class members are "similarly situated." *Pendlebury v. Starbucks Coffee Co.*, 2005 WL 84500, at *3 (S.D. Fla. 2005).  Moreover, the court at this stage need not resolve factual disputes or make credibility determinations.  *Scott v. Heartland Home Finance*, 2006 WL 1209813, at *3 (N.D.

Ga. 2006); *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 520 (D. Md. 2000) ("Factual disputes do not negate the appropriateness of court facilitated notice."). Accordingly, an analysis of any individualized defenses (or denials) is simply **not considered** at the conditional certification stage, but rather is reserved for the decertification stage. *Simpkins v. Pulte Home Corporation*, 2008 WL 3927275, at *5 (M.D. Fla. 2008) ("individual factual analysis is saved for the second stage of certification.")

### III.   PLAINTIFF'S NOTICE IS ACCURATE AND SHOULD BE POSTED AND E-MAILED AS WELL AS MAILED.

Plaintiff's proposed judicial notice is "timely, accurate, and informative." *See Hoffmann-La Roche,* 493 U.S. at 172. As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted. To that end, Plaintiff requests he be permitted to post the Class Notice (Exhibit A) in Defendants' locations, email the Class Notice to all Hourly Landscaping Employees within the defined class, in addition to mailing same via first-class mail. *See Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 493 (E. D. Cal. Apr. 19, 2006) (finding that first class mail, combined with posting provided for the "best notice practicable" to the potential class); *Veliz v. Cintas Corp.,* 2004 WL 2623909, at *2 (N.D. Cal. Nov. 12, 2004) (requiring employer to post notice and consent forms in all of its work sites). E-mail notice serves to further the broad remedial purpose of the FLSA and thus has widely been adopted by courts throughout the country recently. *Lewis v. Huntington Nat. Bank*, 2011 WL 8960489, at *2 (S.D. Ohio June 20, 2011) ("The addresses on file for [former employees] may or may not continue to be accurate, and using a second mode of communication will help ensure that all of these potential plaintiffs will receive at least one copy of the Notice Package."); see also *Phelps v. MC Communications, Inc*., 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011) ("The Court will permit

Plaintiffs to email the notice to those employees for whom Defendants have email addresses, as well as send it by first class mail. Email is an efficient, reasonable, and low-cost supplemental form of notice, particularly where Defendants may lack current physical mailing address information for its former employees.").   Many courts have previously authorized notice via email in FLSA cases, given the statute's remedial purpose and the goal of transmitting the notice to as many potential class members as possible.   Moreover, as another court recently held, "[t]here is no sound reason not to do so here." *Butler v. DirectSAT USA, LLC*, 2012 WL 1203980, at *2 (D. Md. Apr. 10, 2012); *see also Denney v. Lester's, LLC*, 2012 WL 3854466, at *4 (E.D. Mo. Sept. 5, 2012) ("[T]he Court finds fair and proper notice to current and former servers will be accomplished by regular mail, electronic mail, and postings in Defendants' break rooms.") (citing *O'Donnell v. Sw. Bell Yellow Pages, Inc.,* 2012 WL 1802336, at *4 (E.D. Mo. May 17, 2012); *In re Deloitte & Touche, LLP Overtime Litig.,* 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012) (noting that "communication through email is [now] the norm.").

A.   <u>A Reminder Notice Postcard is Appropriate.</u>

Similar to the email transmission of the Notice, a reminder notice postcard is appropriate as well.  Accordingly, Plaintiff requests that he be permitted to transmit a reminder notice postcard to the putative class at the half-way point in the Notice Period.   Indeed, courts have repeatedly permitted such a reminder notice, because it ensures that putative class members are aware of their rights and the time within which to exercise same. *See Hargrove v. Ryla Teleservices, Inc.,* 2012 WL 463442, at *1 (E.D. Va. Feb. 13, 2012) (authorizing plaintiffs' counsel to send a reminder letter to putative class members if responses were not received by plaintiffs within thirty days from the issuance of the original notice."); *Swarthout v. Ryla Teleservices, Inc.,* 2011 WL 6152347, at *5 (N.D. Ind. Dec. 12, 2011) (same); *Graham v.*

*Overland Solutions, Inc.,* 2011 WL 1769737, at \*4 (S.D. Cal. May 9, 2011) (approving reminder postcard to individuals who have not returned the opt-in forms); *Gee v. Suntrust Mortg., Inc.,* 2011 WL 722111, at \*4 (N.D. Cal. Feb. 18, 2011) ("Plaintiffs' counsel may mail a reminder notice forty-five days after issuance of the first notice."); *Harris v. Vector Marketing Corp.,* 716 F.Supp.2d 835, 847(N.D. Cal. 2010) ("Particularly since the FLSA requires an opt-in procedure, the sending of a [reminder] postcard is appropriate."); *Vasquez v. Coast Valley Roofing, Inc*., 670 F.Supp.2d 1114, 1126 (E.D. Cal. 2009) (ordering third-party administrator to send reminder notice, because, "[t]hese procedures provide the best possible notice to the Class Members.")

In light of the FLSA's remedial purposes and the many cases explicitly approving a reminder notice, this Court should permit Plaintiff to send the putative class a reminder notice postcard to ensure they are aware of their rights and the applicable deadlines within which to exercise them.

### B.     A Ninety-Day Notice Period is Appropriate.

Notice periods may vary, but many courts around the country have authorized up to a one hundred twenty (120) day opt-in period for collective actions. Here, in line with many other courts Plaintiff respectfully request that the Court give putative class members ninety (90) days to return their consent to join forms and opt in to the case. Courts have routinely held that a ninety (90) day notice period is appropriate in FLSA cases. *See, e.g., Fiore v. Goodyear Tire & Rubber Co*., 2011 WL 867043, at \*4 (M.D. Fla. March 10, 2011) (setting notice period at 90 days); *Gandhi v. Dell, Inc.*, 2009 WL 3427218, at \*2 (W.D. Tex. Oct. 20, 2009) ("Ample authority suggests that 90 days is a reasonable amount of time to allow potential plaintiffs to opt in."); *Wass v. NPC Intern., Inc.,* 2011 WL 1118774, \*5 (D. Kan. March 28, 2011) (denying the Defendants' request to shorten the opt-in period to fewer than ninety days); *Calderon v. Geico*

*Gen. Ins. Co.,* 2011 WL 98197, at *2, 8–9 (D. Md. Jan.12, 2011) (authorizing a ninety-day notice

period); *Pereira v. Foot Locker, Inc.,* 261 F.R.D. 60, 68–69 (E.D. Pa. 2009) (finding a ninety-day

opt-in period to be reasonable); *Shipes v. Amurcon Corp.*, 2012 WL 1720615, at *4 (E.D. Mich.

May 16, 2012) (overruling Defendants' objections to a 90 day opt-in period); *In re Wells Fargo*

*Wage and Hour Employment Practices Litigation (No. III),* 2012 WL 3308880, at *29 (S.D. Tex.

Aug. 10, 2012) (approving 90 day opt-in period); *Landsberg v. Acton Enterprises, Inc*., 2008 WL

2468868, at *1 (S.D. Ohio June 16, 2008) (same); *Hernandez v. Two Bros. Farm, LLC*, 2008 WL

4613069, at *2 (S.D. Fla. Oct. 15, 2008) (same); *Ballew v. Lennar Corp.,* 2008 WL 4218137, at

*1 (M.D. Fla. Sept. 11, 2008) ("The Court further finds the 90 day period to be reasonable…").

In line with the above authority, Plaintiff respectfully request that the Court set the notice

period at 90 days in this case.

## IV.     NOTICE SHOULD BE GIVEN WITHIN A THREE-YEAR STATUTE OF LIMITATIONS PERIOD.

Notice within a three-year statute of limitations period is appropriate in this case. The

FLSA allows Plaintiff to collect damages within a three-year statute of limitations if they can

show that Defendants' violation of the FLSA was "willful" – meaning the "employer either knew

or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Whether Defendants' violations of

the FLSA were willful is an issue going to the merits of the case and not whether notice should

be issued to potential claimants.  *See Villatoro v. Kim Son Restaurant, L.P.,* 286 F.Supp.2d 807,

811 (S.D.Tex.2003).   The facts concerning willfulness must be elicited during discovery, and

Defendants may challenge the three-year statute of limitations again at an appropriate time. Here,

Defendants will have a difficult time challenging willfulness given the Department of Labor's

repeated findings that its practices violated the FLSA, and its knowing and reckless disregard of

this finding, even after agreeing to comply.  *See generally,* **Exh. I.** Thus, notice should go to all individuals who were employed by Defendants during the three-year period preceding the Court's ruling on the instant Motion.  *See Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F.Supp.2d 937 (W.D. Ark. 2007).

## V.   LIMITED DISCOVERY OF NAMES AND CONTACT INFORMATION OF THE PUTATIVE CLASS IS NECESSARY TO CARRY OUT NOTICE

The opt-in provision of the FLSA requires some procedure for identifying and notifying potential class members. *Morden v. T-Mobile USA, Inc.,* 2006 WL 1727987, at *3 (W.D. Wash. June 22, 2006) (compelling the Defendants to produce the names and addresses of potentially similarly situated employees despite the fact that no conditional class certification motion was pending before the court). "The first step is to identify those employees who may be similarly situated and who may therefore ultimately seek to opt in to the action." *Id.* As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice. *See, e.g., Hoffmann-La Roche,* 493 U.S. at 165; *see also Anglada v. Linens 'N Things, Inc.,* 2007 WL 1552511, at *7 (S.D.N.Y. May 29, 2007); *Henry v. Quicken Loans, Inc.,* 2006 WL 2811291, at *7 (E.D. Mich. Sept. 28, 2006); *Gieseke v. First Horizon Home Loan Corp.,* 408 F.Supp.2d 1164, 1169 (D. Kan. Jan. 10, 2006); *Dietrich v. Liberty Square,* 230 F.R.D. 574, 581 (N.D. Iowa 2005).[2] Thus, if this Court grants Plaintiff's Motion, the Court should likewise order Defendants to provide Plaintiff with a list of all putative class

---

[2] The names, phone numbers, emails, and addresses of potential class members are discoverable during the regular course of discovery even absent judicial notice because current and former Unloaders are critical fact witnesses to this lawsuit. *Hoffmann-La Roche* acknowledged the existence of "alternative bases for the discovery, for instance that the employees might have knowledge of other discoverable matter."  493 U.S. at 160; *see also Franco v. Bank of America Corp.*, 691 F.Supp.2d 1324 (M.D. Fla. 2010) (granting plaintiff's motion to compel discovery of names of potential similarly situated employees); *Disimone v. Atlas Service, Inc.*, 2009 WL 5166262 (S.D. Fla. 2009) (ordering Defendants to produce a list of plaintiffs' co-workers prior to conditional certification).

members' names, addresses, phone numbers, social security numbers,[3] and e-mail addresses to carry out notice.

<b><u>CONCLUSION</u></b>

Plaintiff has met his burden to facilitate notice to potential class members under Eleventh Circuit precedent.   Accordingly, Plaintiff respectfully requests that this Court permit and supervise notice to all current and former Hourly Landscaping Employees who worked for Defendants within the three years preceding the filing of the Complaint, and worked over forty hours in one or more workweeks.

<b><u>CERTIFICATE OF GOOD FAITH</u></b>

Plaintiff's counsel conferred with counsel for Defendants with respect to the relief sought in this motion, and is authorized to represent that Defendants oppose this motion.

Dated this 23rd day of February, 2016.

Respectfully submitted,

**/s/ANGELI MURTHY**
ANGELI MURTHY, ESQ.
FL Bar No.: 088758
MORGAN & MORGAN, P.A.
600 North Pine Island Road, Suite 400
Plantation, Florida 33324
Tel: 954-318-0268
Fax: 954-327-3016
E-Mail: **Amurthy@forthepeople.com**
*Trial Counsel for Plaintiff*

---

[3] Social Security numbers are necessary to effectuate notice so that class members' names can be processed through the national change of address database to ensure the most up to date physical addresses, and also to ensure proper tax reporting of payments should settlement be reached in this matter.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on 23rd day of February, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notification of such filing to all counsel of record.

<u>/s/ ANGELI MURTHY</u>
Angeli Murthy, Esq.
